AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No. 26-mj-516 |
| THE INSTAGRAM ACCOUNT __black_papi_ STORED AT PREMISES CONTROLLED BY META PLATFORMS INC. | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g) | possession of a firearm by a felon |

The application is based on these facts:

See the attached Affidavit, incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Kyle Raguz
*Applicant's signature*

Kyle Raguz, ATF Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____

Digitally signed by Caroline Goldner Cinquanto
Date: 2026.03.24 12:54:51 -04'00'
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Caroline Goldner Cinquanto, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:** THE INSTAGRAM ACCOUNT __black_papi_ STORED AT PREMISES CONTROLLED BY META PLATFORMS INC. | Case No.   26-mj-516 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Kyle Raguz, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since November 2015. I am currently assigned to a

specialized enforcement group, the ATF Firearms Enforcement Group & Carjacking Task Force, whose primary mission is to investigate those individuals and groups that are engaged in the commission of federal firearms, narcotics, and carjacking violations. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I am a graduate of the Criminal Investigator Training Program and the Special Agent Basic Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. This includes training in investigating technological devices, electronic accounts, and ways in which criminals use electronic communications (e.g., telephones, e-mail, social media, and  online communications platforms) to further criminal activity. As a result of my training and experience, as well as the training and experience of other investigators, I am familiar with investigations involving violations of federal criminal laws and executing federal search warrants and seizing evidence in accordance with probable cause. I have been part of investigations that included evidence found on social media platforms and cellular devices.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 922(g) (possession of a firearm by a felon), committed by ORLANDO BAILEY. There is also probable cause to search the

information described in Attachment A for evidence of these crimes further described in Attachment B.

5.    This warrant was previously submitted, and sworn, under docket number 26-mj-504 to the Honorable Pamela A. Carlos on March 20, 2025. Thereafter, your affiant identified an error in the username in that warrant. Specifically, the username listed in 26-mj-504 was _black_papi_ (with only one leading underscore). The correct username is __black_papi_ (with two leading underscores). That error has been corrected here, but the probable cause is otherwise unchanged.

### <u>PROBABLE CAUSE</u>

6.    Pennsylvania Attorney General Gun Violence Task Force Agent Kyle Boyd was monitoring BAILEY's Instagram account with the handle "__black_papi_." Agent Boyd initially observed a post, dated December 29, 2023, which depicted BAILEY in two separate side by side photos. As depicted below, the photo on the left-hand side of the post shows BAILEY in state prison uniform and the photo on the right-hand side shows BAILEY in dark clothing wearing a vest and badge as well as a visible firearm on his waistband:



Ex 1.

At the time of this post on his Instagram page, BAILEY had been convicted of four separate felony drug cases in 2009, 2011, 2014 and 2017, and, therefore, had been advised on four separate occasions that he was a person prohibited from possessing a firearm.

7.      Around June 2025, Agent Boyd observed multiple Instagram stories posted on BAILEY's account which showed him with several males displaying visible firearms. Agent Boyd recognized the location in the photographs near the area of the "Rotten Monkey Bar" located at 430 W Dauphin Street in Philadelphia. BAILEY is the individual depicted in dark clothing and wearing a ski mask covering his face and neck, and a dark object near his waistband close to his badge:



Ex 2a                                    Ex 2b

8.      In February 2026, BAILEY's Instagram account posted an AI generated image of

BAILEY inside the "Rotten Monkey Bar" in uniform and carrying a firearm:



Ex 3.

9.      On February 12, 2026, Philadelphia Police Officers Camilo Molina, Badge #5972, and Michael Wolf, Badge #9920, working the 4pm – 12am shift within the 24th police district, received information submitted by Agent Boyd to East Detectives that BAILEY was working as an armed security guard at the "Rotten Monkey Bar," and was a convicted felon who was not lawfully permitted to possess a firearm. Officers reviewed BAILEY's criminal record to confirm that he was unable to legally possess or own a firearm and that he did not have a permit to carry a firearm, which he did not. Furthermore, Officers Molina and Wolf were provided with several images that consisted of Bailey's December 2023 Instagram post (Exhibit 1), Bailey's JNET photo that contained his identifying information, and the AI generated Instagram image of BAILEY that he posted in early February 2026 inside the "Rotten Monkey Bar" while dressed in a uniform and carrying a firearm (Exhibit 3).

10.     Officers Molina and Wolf arrived at the Bar around 10:00 p.m. Once inside, a black male wearing a red hoodie approached the Officers and identified himself as the owner of the establishment. Within a few seconds, BAILEY, wearing a black hoodie with white lettering and black pants, also approached the Officers. Officer Molina immediately recognized BAILEY based off the images provided by Agent Boyd. Officer Molina asked BAILEY if they could speak outside due to the noise level at the bar. In the course of their conversation, BAILEY told officers he works security at the Rotten Monkey every Thursday, Friday, and Saturday. When asked if he had a gun, BAILEY responded in the affirmative. Officer Molina asked where the firearm was located, and BAILEY pointed to his right hip. Officer Molina recovered an unholstered firearm from BAILEY's right hip. BAILEY then claimed the gun belonged to someone else and he was "holding it" for somebody.

11.     The firearm recovered was a black Ruger Model 57, Serial #641-60977, loaded with 19 live rounds in the magazine and one in the chamber. Upon recovery of the firearm, BAILEY was arrested for unlawful possession of a firearm and charged locally in Philadelphia County.

12.     On March 10, 2026, a federal grand jury returned an indictment charging BAILEY with one count of 18 U.S.C. § 922(g) (felon in possession of a firearm), in connection with the recovery of the firearm described above. BAILEY was arrested by federal agents on March 17, 2026. Incident to his arrest, officers recovered two cell phones from BAILEY's person.

### BACKGROUND CONCERNING INSTAGRAM1

13.     Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

14.     Meta collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical

---

1 The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy," https://privacycenter.instagram.com/policy/; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers.  Meta keeps records of changes made to this information.

15.     Meta also collects and retains information about how each user accesses and uses Instagram.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

16.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.  Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

17.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account.  Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality.  For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service.  Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

18.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers).  Users can also "block" other users from viewing their posts and searching for their account, "mute" users to

avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

19. Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

20. Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

21. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

22. Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear

on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

23.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours.  Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted.  The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

24.     Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

25.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

26.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.  Instagram collects and

retains payment information, billing records, and transactional and other information when these services are utilized.

27.    Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag.  Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram.  Meta retains records of a user's search history and followed hashtags.

28.    Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

29.    Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content.  Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers.  This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

30.    In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

31.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

32.     Content including photographs and the associated captions may provide further evidence of the offense under investigation in this matter. Additionally, users often use communication via social media like Instagram to connect with others sharing similar interests – in this case illegal firearms possession. For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, voice messages, photos, and videos, are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

## CONCLUSION

33.      Based on the forgoing, I request that the Court issue the proposed search warrant.

34.      Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,


s/Kyle Raguz
_____
KYLE RAGUZ
Special Agent, ATF


Subscribed and sworn to me by
telephone on March _____, 2026:

Digitally signed by Caroline
Goldner Cinquanto
Date: 2026.03.24 12:57:30
-04'00'
_____
HON. CAROLINE GOLDNER CINQUANTO
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Instagram account __black_papi_ (active on, but not limited to, December 1, 2023), that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## <u>ATTACHMENT B</u>

### Particular Things to be Seized

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f). Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.      All business records and subscriber information, in any form kept, pertaining to the account, including:

1.      Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.      All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.      Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.      All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.      Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from December 1, 2023 to February 12, 2026

7.      Privacy and account settings, including change history; and

8. Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B. All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, December 1, 2023 to February 12, 2026;

C. All content, records, and other information relating to communications sent from or received by the account from December 1, 2023 to February 12, 2026, including but not limited to:

1. The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2. All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4. All associated logs and metadata;

D. All content, records, and other information relating to all other interactions between the account and other Instagram users **from** December 1, 2023 to February 12, 2026, including but not limited to:

1. Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2. All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3. All contacts and related sync information; and

4. All associated logs and metadata;

E. All records of searches performed by the account from December 1, 2023 to February 12, 2026; and

F.    All location information, including location history, login activity, information geotags, and related metadata **from** December 1, 2023 and February 12, 2026.

Meta is hereby ordered to disclose the above information to the government within fourteen days of issuance of this warrant.

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☑ Original          ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>THE INSTAGRAM ACCOUNT __black_papi_<br>STORED AT PREMISES CONTROLLED BY META<br>PLATFORMS INC. | )<br>)<br>)    Case No.  26-mj-516<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Pennsylvania_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____April 7, 2026_____ *(not to exceed 14 days)*

❑ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____the duty magistrate_____ .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❑ for _____ days *(not to exceed 30)*     ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____

City and state:   Philadelphia, PA  _____

Digitally signed by Caroline Goldner Cinquanto
Date: 2026.03.24 12:59:56 -04'00'

*Judge's signature*

Hon. Caroline Goldner Cinquanto, U.S. Magistrate Judge
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br> 26-mj-516 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*